THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
ANTONIO ROSADO ALVARADO, Defendant and Appellant.

No. CR-62-398.        Decided January 29, 1964.

*Santos P. Amadeo* and *Jorge Luis Landing* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

At the close of the direct testimony of María Medina, an eyewitness of the automobile accident as a result of which appellant was prosecuted for involuntary manslaughter, the record shows:

"Defense Attorney (Mr. Amadeo):

Your Honor, before examining the witness we are going to ask the district attorney, if he has any statement made by this lady in the course of the investigation, if he would let us have it.

Judge: District Attorney . . .

District Attorney:

Your Honor, even if she had given any, we believe that it would form part of the investigation of the district attorney, of the preliminary investigation, and we would not be bound to show it. We already gave the defense the defendant's statement, which is the one to which he is entitled.

Defense Attorney (Mr. Amadeo):

Q. Madam, did you testify already before any officer?

Witness:

A. I did before the judge.

Q. Before that, didn't you testify before district attorney Burgos Mundo?

A. Yes, sir.

Q. A fat man, red looking?

A. Yes, sir.

District Attorney: We submit the question.

Defense Attorney: Submitted.

Judge: The request of the defense is denied.

Defense Attorney: Exception."

At the end of the direct testimony of María Isabel Castro Quiñones, another eyewitness of the facts and wife of one of the two deceased, the record shows:

"Defense Attorney (Mr. Amadeo):

Q. Madam, did you give any statement before any district attorney in the course of the investigation?

A. Yes.

Defense Attorney: We make the same request, Your Honor, which we made in the case of the other witness.

Judge: The district attorney . . .

District Attorney: We make the same objection as in the other case, Your Honor.

Judge: The same ruling.

Defense Attorney: Exception."

In the course of the testimony of Daniel Ramos Matos, eyewitness of the facts, the record again shows upon examination by the defense:

"Q. Did you testify before the district attorney?

A. Yes, sir.

Q. And did you sign the statement?

A. Yes, sir.

Defense Attorney: We are going to ask that the sworn statement given by this witness before the district attorney be shown to us.

Judge: District Attorney . . .

District Attorney: The request is made, Your Honor, the same request which was made yesterday in connection with another witness.

Judge: Request denied.

Defense Attorney: Exception."

At the opening of the hearing the judge asked the parties if they were ready and the defense said that he would commence the trial by requesting to be permitted in the afternoon to take steps to produce a witness who had not appeared, and that he thought that the defendant could locate him in Río Grande and bring him; that this witness had always appeared at previous hearings, something unusual

could have happened to him, and that he had been present the last time the case was set for trial. The trial court granted to the defense the opportunity to try to locate that witness, and said:

"Does the colleague say that a person left already for Río Grande in order to try to locate that witness?

Defense Attorney: Yes, Your Honor.

Judge: Let us wait then for the result of those steps and then decide what may be proper if the witness does not appear." (The hearing commenced.)

In the course of his evidence the defense offered the stenographic transcript of the sworn statement of that witness, José Meléndez Rosario, duly certified by the court stenographer. There was no question that it was a faithful and exact transcript of the testimony given in court by the witness in the course of a former trial of the case.

After hearing evidence on the inability of the defense to produce this witness before the court and of the steps taken by the defendant to that end (the evidence tended to show that the witness had left recently on a tour to the United States and his address was not known), the trial court was of the opinion that it should grant the request of the defense and admitted the former transcribed testimony of this witness for transmission to the jury. Thereafter, in view of a motion for reconsideration made by the district attorney relying on § 11 of the Code of Criminal Procedure, the court set aside its order, as a matter of law, and refused to admit the transcribed testimony of that witness.

■ Where the sworn statements given by prosecution witnesses to which we referred hereinabove are denied to defendant, the judgment of conviction should be reversed and a new trial ordered on the authority of our decision in *People* v. *Ribas*, 83 P.R.R. 371 (1961). The ground adduced that it would amount to divulging the secrecy of the preliminary investigation is not valid after these witnesses

testified in court and the problem is so serious that it calls for an impartial trial. On the other hand, it would be mere speculation on our part, not knowing the content of those statements nor how they could affect the credibility of material witnesses before the jury, to anticipate that the refusal of the court to furnish them could not have prejudiced the defendant or that he was not deprived of a fair trial.

■■■ The refusal of the trial court to admit the transcribed testimony of witness José Meléndez is also reversible error if, as a question of fact, it determined that the appearance of that witness was impossible and that the evidence showed that defendant had complied with the necessary requirements to justify the admission of the testimony given at the former trial. The refusal to admit that testimony, applying § 11 (4) of the Code of Criminal Procedure, was an error of law. This section provides that:

"In a criminal action the defendant is entitled . . . . (4) To be confronted with the witnesses against him in the presence of the court, except that where the charge has been preliminarily examined before a prosecuting attorney or a justice of the peace, or where the testimony of a witness on the part of The People who is unable to give security for his appearance has been taken in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness, the deposition of such witness may be read, upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found within Puerto Rico."

The purpose of this section, as shown by its text, is to protect the rights of the defendant. *Cf. People* v. *Reyes*, 10 P.R.R. 240, 242 (1906) ; *People* v. *Rojas*, 16 P.R.R. 238, 242 (1910) ; *People* v. *González*, 57 P.R.R. 913, 920 (1941). It is not a provision aimed at limiting the rights of a defendant. Guaranteeing, as it does guarantee, to defendant the right to be confronted with the witnesses against him, the reference to a witness *"on the part of The People"* is clear.

The district attorney's argument, which evidently had the effect of changing the trial court's mind, was that § 686 of California which in 1902 read the same as our § 11 in subd. 4 thereof at the time we adopted it, was amended by addition in 1911 including the testimony *on behalf of The People or the defendant* of a witness deceased, insane, out of jurisdiction, etc., given in a former trial. The inference was that since § 11 *supra* was not similarly amended here, the trial court is thereby precluded from admitting the transcribed testimony of that witness because he was not a witness for The People.

As a question of reality, in our search we have found that in *People* v. *Bird*, 64 Pac. 259, decided in 1901 before the 1911 amendment, when § 686 and our § 11 contained the same provisions, California held that at common law both parties, the prosecution and the defense, had the right to offer the testimony given by a witness in a former trial, citing *Mattox* v. *United States*, 156 U.S. 237, and other authorities; that § 686 had the effect of restricting that right of the district attorney, who could only offer the testimony in the manner specifically provided by that section, but that the defense, according to the common law, had no such restrictions of the statute and could offer the testimony. Hence, contrary to the district attorney's belief, the purpose of the 1911 amendment was to grant that right also to The People, in view of the holding, and not to declare that defendant had lost it or to restrict it.

■ However, independently of the California treatment, the question is not governed by § 11 of the Code of Criminal Procedure but by § 35 (6) of the Law of Evidence. It reads:

"In conformity with the preceding provisions, evidence of the following facts may be given upon a trial:
".      .      .      .      .      .   .   .

"(6) The testimony of a witness deceased, or out of the jurisdiction, or unable to testify, given in a former action between the same parties, relating to the same matter."

*Cf. Irizarry* v. *Díaz*, 35 P.R.R. 132, 134 (1926); *Villaronga, Comm.* v. *District Court*, 74 P.R.R. 306, 311 (1953); *Cruz* v. *Bruno*, 76 P.R.R. 905, 911 (1954).

■ Defense evidence having been prevented by an error of law from passing to the jury, a new trial is ordered also by reason of such error.